IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**Gordana Schifanelli**
103 Wineland Way
Stevensville, Maryland 21666

**PLAINTIFF**

v.  CIVIL ACTION NO:

**Wells Fargo Advisors, LLC**
Resident Agent:
CSC-Lawyers Incorporating Service
Company
7 St. Paul Street, Suite 1660
Baltimore, Md. 21202   **L10CV0314**

**and**

**Robert G. Carpenter**
**in his individual and**
**representative capacity**
7 St. Paul St., 3rd Floor
Baltimore, Maryland 21202

**DEFENDANTS**  Jury Trial Demand

## COMPLAINT

Plaintiff, Gordana Schifanelli, files this Complaint and sues Defendants for intentional and willful violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., retaliation under section 704(a) of Title VII of the Civil Rights Act of 1964, sec. 49B of the Maryland Code, the Equal

1

Pay Act, 29 U.S.C.A. sec. 206, and the Fair Labor Standards Act, 29 U.S.C. sec. 203(e). This is a suit in equity authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 USCA §§ 2000e et seq, and the Civil Rights Act of 1866 national origin, the Equal Pay Act, the Fair Labor Standards Act, and the Maryland Wage Payment and Collection Law, Md. Ann. Code, Labor & Employment sec. 3-501, et. seq.

## JURISDICTION

The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by 42 USCA §§ 2000e et seq., providing for relief against racial, religious, national origin, and sex discrimination in employment, by 42 USCA § 1981, providing for the equal rights of all persons in every state and territory within the jurisdiction of the United States, as well as the Fair Labor Standards Act and the Equal Pay Act, and 28 USCA §§ 2201 and 2202. . Plaintiff has complied with conditions precedent to jurisdiction under 42 USC §2000e, et seq. Specifically, a charge of employment discrimination was filed with the Baltimore Field Office of the Equal Employment Opportunity Commission within 180 days of the unlawful employment practice, the charge has been pending with that office since approximately 5/15/2009, and a Determination with adverse inference was rendered by that agency on 2/1/2010.

### THE PLAINTIFF

1. Plaintiff Gordana Schifanelli ["Schifanelli"] is an adult naturalized citizen of the United States who resides in the State of Maryland. She holds a Bachelor Degree in Economics and a Master's Degree in Economics & Finance. She is a licensed financial advisor, a published author on

securities subjects, and serves from time to time as an adjunct professor at Anne Arundel Community College teaching personal finance courses.

2.  Plaintiff was employed by Defendant on a full-time basis as a Financial Advisor with Wells Fargo Advisors' (then doing business as "Wachovia Securities, LLC") Investment Services Group beginning on February 20, 2009, through January, 2010. At all relevant times Plaintiff was an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq. and Article 49B of the Maryland Code (Md. Ann. Code).

### DEFENDANT WELLS FARGO

3.  Defendant Wells Fargo Advisors ("Wells ") is a corporation doing business throughout the fifty states. Wells performs financial services for client investors, including financial portfolio advice and management via its financial advisor employees. Wells generally employs financial advisors in one of at least two of its major corporate divisions: either as a member of Wells Fargo Private Client Investments ("PCI") or its Investment Services Group ("ISG"). Financial advisors employed with Wells' PCI are expected to solicit and retain their own investor clients in a more or less traditional broker-investor scenario, their salaries derived from a combination of assets under management, transactions, etc. On the other hand, ISG advisor employees rely for their salary almost solely on clinet referrals from Wells (or "Wachovia") bank branches. These branches are assigned to an advisor by Wells management. ISG advisors also rely on existing Wells' client accounts redistributed upon the retirement, resignation, or termination of employment of their contemporaries. Advisors in both divisions require the same licenses and certifications, and rely on their investment knowledge and experience in managing investor portfolios or when making recommendations to Wells' clients.

4. At all relevant times Wells regularly employed more than fifteen employees, and was and is an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., and Article 49B of the Md. Ann. Code §42(a). Defendant Wells Fargo is subject to the provisions of the Civil Rights Act of 1964 42 U.S.C. 2000e, et seq., Article 49B of the Md. Ann. Code §42, the provisions of the Fair Labor Standards Act, the Equal Pay Act, and the Maryland Wage Payment and Collection Law.

### DEFENDANT ROBERT CARPENTER

5. Defendant Robert Carpenter ("Carpenter") is and was at all relevant times employed by, and was an agent of, Wells Fargo Advisors, LLC at its Baltimore, Maryland office complex. At all relevant times Carpenter was Regional Manager and Senior Vice President – Investments for Wells and Schifanelli's first line supervisor. As regional manager, Carpenter had authority to hire and discharge financial advisors on a contract basis, or pursuant to contract terms, respectively. Carpenter oversaw the activities of, and was expected to manage, all ISG financial advisors in that complex. He was specifically charged with, *inter alia*, assigning bank branches to ISG financial advisors for referral purposes and was solely responsible for account redistribution among all ISG advisors in the Baltimore, Maryland complex upon retirement, resignation or termination of any financial advisor.

6. Beginning in late 2008, Carpenter courted Schifanelli to be a financial advisor for Wells' ISG. Schifanelli had previously been a successful financial advisor at Merrill Lynch for approximately ten years and in a capacity similar to Wells' PCI in that she had been required to solicit and retain her own client base. This she successfully did, and Wells' courted Schifanelli because of the substantial

amount of client portfolio assets that could be expected to transfer with her should she accept employment at Wells ISG. Schifanelli accepted employment with Wells in February, 2009.

7. Carpenter was an agent of Wells Fargo and is an "employer" within the meaning of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., and Article 49B of the Md. Ann. Code §42(a). Defendant Carpenter is subject to the provisions of the Civil Rights Act of 1964 42 U.S.C. 2000e, et seq., Article 49B of the Md. Ann. Code §42, the provisions of the Fair Labor Standards Act, the Equal Pay Act, and the Maryland Wage Payment and Collection Law.

## LEGAL CLAIMS

### COUNT 1 - GENDER DISCRIMINATION

8. All allegations of this Complaint are incorporated fully in this Count.

9. Between February, 2009, and January, 2010, Defendants engaged in unlawful discrimination by systematically denying Plaintiff the same opportunities as male financial advisors in the Baltimore, Maryland complex. Specifically, Defendants

    a. denied the same level of staff support to Plaintiff even though Plaintiff had more experience, higher certifications, a higher level of formal education in finance, and a history of higher production levels than other male advisors; and

    b. consistently redistributed the client accounts of recently departed advisors to male advisors only, and not distributing any such accounts to Plaintiff even though Plaintiff had more experience, higher certifications, a higher level of formal education in finance, and a history of higher production levels than other male advisors; and

  c. assigned to Plaintiff one new and non-established branch several hours drive from her home, while assigning multiple branch banks to male advisors who had lesser experience, certifications, formal education in finance, and history of lower production levels. This included the assignment of a subsequently hired male advisor with little or no experience in finance to the main branch bank in downtown Baltimore.

  d. engaged in company social gatherings that took place during regular business hours and with invitation to only male advisors, and with no similar extension of invitation to Plaintiff or other female advisors.

10. Plaintiff attempted to resolve the discrepancies by requesting from Defendant Carpenter that she be provided with the Wells Fargo account redistribution policy, but was never provided any documentation regarding such redistribution.

11. The Defendants engaged in such discriminatory behavior due to her gender, and caused Plaintiff financial losses, ultimately depriving her of any monthly income between August, 2009, and January, 2010, and causing her income to be less than that of other similarly situated male advisors.

12. The Defendants committed the acts described in this count intentionally, oppressively, fraudulently, and maliciously, entitling Plaintiff to an award of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendants.

<u>Relief Requested:</u> Plaintiff requests that (a) Defendants be ordered to pay Plaintiff for lost income in the amount of $450,000; and (b) punitive damages in the amount of $1,500,000.00; and (c) reasonable attorneys fees and costs.

## COUNT 2 – DISCRIMINATION BASED ON NATIONAL ORIGIN

13. All allegations of this Complaint are incorporated fully in this Count.

14. That the Plaintiff is a U.S. citizen who lawfully immigrated to this country from Eastern Europe in 1999.

15. Between February, 2009, and January, 2010, Defendants engaged in unlawful discrimination by systematically denying Plaintiff the same opportunities as other financial advisors in the Baltimore, Maryland complex. Specifically, Defendants

    a. denied the same level of staff support to Plaintiff even though Plaintiff had more experience, higher certifications, a higher level of formal education in finance, and a history of higher production levels than other advisors; and

    b. consistently redistributed the client accounts of recently departed advisors to male advisors only, and not distributing any such accounts to Plaintiff even though Plaintiff had more experience, higher certifications, a higher level of formal education in finance, and a history of higher production levels than other advisors; and

    c. assigned to Plaintiff one new and non-established branch several hours drive from her home, while assigning multiple branch banks to male advisors who had lesser experience, certifications, formal education in finance, and history of lower production levels.

    d. engaged in company social gatherings that took place during regular business hours and with invitation to only male advisors, and with no similar extension of invitation to Plaintiff or other advisors.

16. Plaintiff attempted to resolve the discrepancies by requesting from Defendant Carpenter that she be provided with the Wells Fargo account redistribution policy, but was never provided any documentation regarding such redistribution. Plaintiff further requested from Defendant Carpenter

succinctly that she be treated equally with other financial advisors by having the same staffing as other similarly situated males, and that she be included in account redistributions in an equitable manner. Plaintiff further   Defendants failed to respond.

17. The Defendants engaged in such discriminatory behavior due to her national origin, and caused Plaintiff financial loss, ultimately depriving her of any monthly income between August, 2009, and January, 2010, and causing her income to be less than that of other similarly situated male advisors.

18. The Defendants committed the acts described in this count intentionally, oppressively, fraudulently, and maliciously, entitling Plaintiff to an award of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendants.

Relief Requested:  Plaintiff requests that (a) Defendants be ordered to pay Plaintiff for lost income of $450,000; and (b) punitive damages in the amount of $1,500,000.00; and (c) reasonable attorneys fees and costs.

## COUNT 3 – RETALIATION

19. All allegations of this Complaint are incorporated fully in this Count.

20. After Plaintiff became aware that Defendants were engaging in discriminatory practices she filed the aforementioned charge of discrimination with EEOC on or about 5/15/2009, presenting personally on the same day of filing a courtesy copy to Defendant Carpenter. Subsequent to filing the suit, Defendant Carpenter hired a new female advisor. In July, 2009, an ISG financial advisor resigned from Wells. Defendant Carpenter redistributed accounts to both male and female advisors, but with the exception that no accounts were redistributed to Plaintiff, even though Plaintiff had more experience, higher certifications, a higher level of formal education in finance, a history of higher production levels

than other advisors who received accounts, and more seniority at Wells than several other advisors who received accounts.

21. Defendant Carpenter's redistribution of accounts to all advisors except to Plaintiff in July, 2009, was in direct retaliation against Plaintiff for having filed the EEOC complaint in May, 2009. At all times Carpenter was an agent of Defendant Wells and his actions were subject to oversight by Defendant Wells. Although Wells Corporate was <u>specifically</u> informed of this retaliatory measure, as well as the previous discriminatory behavior of its agent Carpenter, at no time did Defendant Wells redress this retaliation or attempt to mitigate the effects of Defendant Carpenter's actions on Plaintiff.

22. The Defendants retaliatory behavior caused Plaintiff financial loss, ultimately depriving her of any monthly income between July, 2009, and January, 2010, and causing her income to be less than that of other similarly situated male advisors.

23. The Defendants committed the acts described in this count intentionally, oppressively, fraudulently, and maliciously, entitling Plaintiff to an award of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendants.

<u>Relief Requested:</u> Plaintiff requests that (a) Defendants be ordered to pay Plaintiff for lost income of $450,000; and (b) punitive damages in the amount of $1,500,000.00; and (c) reasonable attorneys fees and costs.

## COUNT 4 – CONSTRUCTIVE DISCHARGE

24. All allegations of this Complaint are incorporated fully in this Count.

25. Between February, 2009, and January, 2010, Defendants engaged in consistent, disparate and discriminatory behavior that caused Plaintiff's monthly income to drop to zero. Because she was

not provided the same access to established Wells bank branches as were her male counterparts, because of Defendants' willful account redistributions to male advisors only, and because of Defendants' retaliation against her for having filed the EEOC charge of discrimination, Plaintiff received no pay due between approximately August, 2009, and January, 2010. Her pay checks during this time are consistently in the amount of $0.00.

26. Plaintiff is not independently wealthy, is the mother of three small children, and needs to work in order to earn her living. Defendants' refusal to redress the discriminatory account distribution and branch assignments and their failure even to respond to Plaintiff's EEOC charge of discrimination filed eight months prior, created the perception that it would continue to discriminate against Plaintiff. This, combined with the fact that as a result Defendant Wells continued to issue Plaintiff paychecks with no pay due, made continued employment for Plaintiff intolerable. The Plaintiff was thus forced to resign in January, 2010, in order to accept employment that would provide any income more than zero dollars per month.

27. The Defendants committed the acts described in this count intentionally, oppressively, fraudulently, and maliciously, entitling Plaintiff to an award of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendants.

Relief Requested: Plaintiff requests that (a) Defendants be ordered to pay Plaintiff for lost income of $450,000; and (b) punitive damages in the amount of $1,500,000.00; and (c) reasonable attorneys fees and costs.

## COUNT 5 – VIOLATION OF THE FAIR LABOR STANDARDS ACT AND MARYLAND WAGE AND HOUR LAW

28. All allegations of this Complaint are incorporated fully in this Count.

29. At all times, Plaintiff was an "employee" of the Defendant within the meaning of the Fair Labor Standards Act, 29 U.S.C. sec. 203(e), and a covered employee of the Maryland Wage and Hour Law, Md. Ann. Code, Labor & Employment, sec. 3-401, et. seq., and Defendant Wells was an "employer" under same.

30. Between August, 2009, and January, 2010, Defendant Wells failed to pay Plaintiff any wages, including the statutory minimum wage for hours worked during that time.

31. Wells failed to pay any bonus, commission, or other form of draw or compensation to Plaintiff during this time, and her commissions during this period were zero.

32. The Defendants committed the acts described in this count intentionally, oppressively, fraudulently, and maliciously, entitling Plaintiff to an award of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendants.

33. Relief Requested: Plaintiff requests that (a) Defendants be ordered to pay Plaintiff damages of $25,000; and (b) punitive damages in the amount of $100,000; and (c) reasonable attorneys fees and costs.

## COUNT 6 – VIOLATION OF THE EQUAL PAY ACT

34. All allegations of this Complaint are incorporated fully in this Count.

35. At all times, Plaintiff was an "employee" of the Defendant Wells, and Wells was an "employer" within the meaning of the Equal Pay Act.

36. Defendants caused Plaintiff, a female, to be paid different wages than similarly situated males in positions requiring equal skill, effort and responsibility under similar working conditions, by intentionally and willfully excluding Plaintiff from account redistributions and causing her to be excluded from sources of referrals that all other male employees enjoyed, as described in previous Counts of this Complaint, and even though Plaintiff had equal or more experience, higher education and prior salary, education, and a proven ability to generate higher revenue for employer's business than other male employees that were paid higher wages for non-meritorious reasons.

<u>Relief Requested:</u>  Plaintiff requests that (a) Defendants be ordered to pay Plaintiff liquidated damages of $450,000; and (b) punitive damages in the amount of $1,500,000; and (c) reasonable attorneys fees and costs.

2/4/2010
Date

Respectfully Submitted,

*Gordana Schifanelli*
Gordana Schifanelli
Plaintiff, pro se
c/o 705 Melvin Ave., Ste. 104
Annapolis, MD 21401
240-882-2402